UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 1:04-CV-209 |
| A STAFFING KOMPANY, INC.; ) | |
| JERRY SCHEIB; and DORIS BURNS, ) | Judge Curtis L. Collier |
| ) | |
| ) | |
| Defendants. ) | |

## **M E M O R A N D U M**

Defendants A Staffing Kompany, Inc. ("ASK"), Jerry Scheib ("Scheib"), and Doris Burns ("Burns") (collectively "Defendants") filed a motion to dismiss (Court File No. 23). Defendants filed a brief in support of their motion principally arguing the Court lacks subject matter jurisdiction because Plaintiff Liberty Mutual Insurance Company ("Liberty") is not the real party in interest and a non-diverse party must be joined (Court File No. 24). Liberty filed a brief in response (Court File No. 34), Defendants filed a reply (Court File No. 46), and with the permission of the Court (Court File No. 51), Liberty filed a sur-reply (Court File No. 52). After Liberty filed its sur-reply, Defendants moved to strike Liberty's sur-reply or in the alternative to file a response to Liberty's sur-reply (Court File No. 53). Also, Defendants have requested the Court to allow oral argument on Defendants' motion to dismiss (Court File No. 47).

The Court believes oral argument is unnecessary, therefore, it will **DENY** Defendants' request for oral argument (Court File No. 47). Defendants' motion to strike is without merit because

the Court expressly permitted Liberty to file its proposed sur-reply. However, in the interest of fairness, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motion to strike (Court File No. 53). The Court will not strike Liberty's sur-reply but the Court will deem Defendants' proposed response to Liberty's sur-reply (Court File No. 53, Exh. A) filed and the Court will consider Defendants' response for purposes of the current memorandum.

After careful consideration of the parties' briefs, and for the following reasons, the Court will **DENY** Defendants' motion to dismiss.

## I. STANDARD OF REVIEW

### A. Rule 12(b)(1)

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally come in two varieties. A *facial* attack on the subject matter jurisdiction alleged in a complaint challenges the sufficiency of the pleading. In reviewing a facial attack, a trial court takes the plaintiff's allegations in the complaint as true, similar to a Rule 12(b)(6) motion to dismiss. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A *factual* attack challenges the existence of subject matter jurisdiction. In reviewing a factual attack, a trial court attaches no presumption of truthfulness to the plaintiff's factual allegations. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *Ritchie*, 15 F.3d at 598; *Ohio Nat'l*, 922 F.2d at 325; *Cooley v. United States*, 791 F. Supp. 1294, 1298 (E.D. Tenn. 1992), *aff'd sub nom. Myers v. United States*, 17 F.3d 890 (6th Cir. 1994).

"When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the

burden of proving jurisdiction in order to survive the motion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). Where facts presented before the trial court give rise to a factual controversy concerning subject matter jurisdiction, the court is required to weigh the conflicting evidence and make findings of fact to decide whether jurisdiction exists. *Id.* (noting the district court is empowered to resolve factual disputes when necessary to address challenges to subject matter jurisdiction); *RMI Titanium*, 78 F.3d at 1134; *Ritchie*, 15 F.3d at 598; *Ohio Nat'l*, 922 F.2d at 325; *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915-18 (6th Cir. 1986).

### B. Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issue of material fact exists, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S.Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of

fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II. **RELEVANT FACTS**

Liberty is a corporation with its principal place of business in Massachusetts (Court File No. 1, Complaint, ¶ 1). ASK is a corporation with its principal place of business in Tennessee (*Id.* at ¶ 2). Scheib and Burns are residents of Tennessee (*Id.* at ¶¶ 3, 4).

In Tennessee, all employers with five or more employees are required to maintain workers' compensation insurance (*Id.* at ¶ 8). Some of these employers are not able to obtain workers' compensation insurance in the voluntary market (*Id.*). To meet the workers' compensation needs of the employers who are unable to obtain coverage through ordinary methods, the Tennessee

4

Legislature has authorized the utilization of a residual market mechanism.[1] Tenn. Code Ann. § 56-5-314(a). All workers' compensation insurance carriers who do business in Tennessee, unless exempted by statute, are required to participate in a "plan" to assure the availability of workers' compensation insurance to employers in the residual market. Tenn. Code Ann. § 56-5-314(c). The "plan" is known as the Tennessee Workers' Compensation Insurance Plan ("TWCIP") (Court File No. 23, Exh. A; Court File No. 35, Exh. A). The basic idea of TWCIP is to equitably distribute the risks of insuring employers in the residual market among all insurers. Tenn. Code Ann. § 56-5-314(c)(1).

Under TWCIP, an employer who is unable to obtain workers' compensation insurance through ordinary methods may apply by written application for coverage under TWCIP (*Id.* at pp. 12-13; Complaint at ¶ 10-11). All applications are sent to the plan administrator, AON Risk Services of Missouri, Inc. ("AON"). Upon receipt of the application, AON issues a written insurance binder to the employer and randomly designates a participating insurance carrier which issues a workers' compensation policy in its own name (Complaint at ¶ 11). The workers' compensation insurance premium is then determined by the insurance carrier based on (a) the size of the employer's payroll, (b) the rate corresponding to the classification code(s) for the type of work the insured's employees perform, and (c) the "experience modification factor" which is determined by the particular employer's risk history, or in other words, the employer's safety record (*Id.* at ¶ 13). With respect to the experience modification factor, the fewer claims an employer has had in

---

[1] A "residual market mechanism" is defined as "an arrangement, either voluntary or mandated by law, involving participation by insurers in the equitable apportionment among them of insurance which may be afforded applicants who are unable to obtain insurance through ordinary methods." Tenn. Code Ann. § 56-5-302(9).

the past, the lower its experience modification factor will be. Lower experience modification factors result in lower premiums (*Id.* at ¶¶ 14-16).

According to the Plan Document that outlines TWCIP and the rules and regulation of TWCIP, AON is authorized to "enter into contracts with the [insurance carriers] to implement the TWCIP"(Court File No. 23, Exh. A, p. A-1). The insurance carriers participating in the plan cede 100% of all collected premiums (less their fees) and 100% of all losses and premium collection expenses to TWCIP (*Id.* at p. 7). In this way, TWCIP distributes the losses and premiums among the participating insurance companies (*See Id.* at pp. 18-20).

Before 2000, Scheib was the president of a company named APPS, Inc. ("APPS") (Complaint at ¶ 18). APPS had workers' compensation insurance through TWCIP. APPS had a poor loss history and an experience modification factor of 1.83 (*Id.* at ¶ 20). Scheib decided not to renew APPS's policy in April 2000 (*Id.* at ¶ 23). According to Liberty, Scheib, with the assistance of Burns, formed ASK, which was really the same entity as APPS, in order to receive a reduced workers' compensation premium (*Id.* at ¶¶ 23-24). An application was submitted to AON on behalf of ASK that allegedly misrepresented ASK's payroll and did not disclose ASK's and APPS's relationship (*Id.* at 36-37). Also, Liberty avers Defendants have unpaid premiums of at least $113,631 (*Id.* at ¶ 34).

On July 12, 2004, Liberty filed suit against Defendants seeking payment of unpaid premiums (Court File No. 1, Complaint, at ¶¶ 53-54). Over a year later, Defendants filed their first motion to dismiss arguing this Court lacks subject matter jurisdiction because TWCIP, a resident of Tennessee, is the real party in interest and/or is an indispensable party which if added to the current suit would destroy diversity of citizenship.

6

## III. DISCUSSION

### A. Subject Matter Jurisdiction

As it stands now, the Court has diversity jurisdiction over the current action because Liberty is a Massachusetts resident, all Defendants are residents of Tennessee, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. However, Defendants contend TWCIP, not Liberty, is the real party in interest under Fed. R. Civ. P. 17(a). Liberty counters by arguing TWCIP has no capacity to sue or be sued and Liberty is the real party in interest.

Fed. R. Civ. P. 17 provides in pertinent part:

(a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

(b) Capacity to Sue or be Sued. . . . The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held . . . .

Fed. R. Civ. P. 17(a), (b). If TWCIP does not have the capacity to sue or be sued, Defendants' argument concerning TWCIP as the real party in interest fails on its face. Therefore, the Court will first address Liberty's contention TWCIP does not have the capacity to sue or be sued.

In essence Liberty avers TWCIP is a contractual mechanism designed to redistribute risk and is not a legal entity. Defendants disagree, but do not cite any cases holding TWCIP or a similar plan is an entity that can sue or be sued. Further, Defendants do not cite one case in which TWCIP or

7

a similar plan actually was a party to a lawsuit. This lack of precedent is significant because similar plans are and have been present in most states[2] for many years. *See, e.g., Cretecher Lynch & Co. v. NCCI*, 149 F.3d 817, 818 (8th Cir. 1998) (Missouri); *Hartford Accident & Indem. Co. v. Pro-Football, Inc.*, 127 F.3d 1111, 1113 (D.C. Cir. 1997) (District of Columbia & Virginia); *Liberty Mut. Ins. Co. v. Staffing Am. of Ala., Inc.*, 2006 WL 54429, at *1 n.1 (E.D. Mich. Jan. 10, 2006) (Alabama); *Liberty Mut. Ins. Co. v. Decking & Steel, Inc.*, 301 F. Supp. 2d 830, 832 (N.D. Ill. 2004) (Illinois); *Hornet Exp. v. Zurich Am. Ins. Group*, A.2d, 2006 WL 177523, at *1 (N.J. Super. Ct. App. Div. 2006) (New Jersey).

After conducting its own research, the Court was able to find only one state plan that has been a party to a lawsuit. *See, e.g., Skogquist Trucking & Excavating Inc. v. Minnesota Workers' Compensation Assigned Risk Plan*, 898 F. Supp. 1349 (D. Minn. 1995). This state plan is the Minnesota workers' compensation plan. In Minnesota, the workers' compensation plan, by statute, creates programs, has assets, issues insurance policies, enters contracts, and is a member of a reinsurance association. *See Id.* at 1352-53, 56; Minn. Stat. § 79.01, *et seq.* TWCIP, as explained below, is very different from the Minnesota plan. Therefore, even though the Minnesota plan has the capacity to sue and be sued, this fact has no bearing on the Court's decision of whether TWCIP has the capacity to sue or be sued.

The only case the Court is aware of which has a relevant discussion of TWCIP is *NCCI v.*

---

[2] According to the National Council of Compensation Insurance's ("NCCI") website, it administers residual workers' compensation plans in twenty jurisdictions. *See* https://ncci.com/NCCI/Article.aspx?cat=rm1&id=prog&articleUrl=web/news/infostop/residual/rm_programs.htm.
This same website lists the residual workers' compensation plan administrators by state. *See* https://ncci.com/NCCI/Article.aspx?cat=rm1&id=aac&articleUrl=web/news/infostop/residual/rmadmin.htm.

*Hopkins*, No. 1-92-082, Judge R. Allan Edgar, (E.D. Tenn. 1992). In *Hopkins*, Magistrate Judge Thomas Phillips[3] filed a report and recommendation discussing the Tennessee residual market mechanism as it existed in the early 1990s (Court File No. 34, Part 3).[4] Judge Phillips stated in relevant part:

> It is apparent that the [TWCIP] is not a "plan" as that term is usually understood and **is not a legal entity** within itself. The [TWCIP] is a **method** of providing workers' compensation insurance to employers who are unable to obtain such coverage in the voluntary market.

(Court File No. 34, Part 3, pp. 20-21 (emphasis added)). Defendants try to distinguish *Hopkins* by arguing TWCIP has changed since Judge Phillips penned the above statement. In fact, TWCIP has changed in at least two significant ways. Previously, the administrator of TWCIP was the National Council of Compensation Insurance ("NCCI") (*Id.* at p. 22). Now the administrator is AON. Also, under the old system, reinsurance was handled by the National Workers' Compensation Reinsurance Pool ("National Pool") (*Id.*). Judge Phillips adequately described the National Pool as follows:

> National Pool [] is a voluntary association of insurance carriers writing workers' compensation insurance in states throughout the country . . . which have entered into a voluntary agreement to spread the risk arising out of their assigned business. In actuality, the "articles of agreement" entered into by insurance companies providing coverage to employers in the residual market create the National Pool. Thus, these articles of agreement effectuate a reinsurance mechanism referred to or commonly known as the [National Pool]. Most of the insurance companies which are members of NCCI are also parties to the articles of agreement. NCCI is the designated administrator of the Pool . . . .

(*Id.* at 22-23); *see also Jo Ann Forman, Inc. v. NCCI*, 13 S.W.3d 365, 366-67 (Tenn. Ct. App. 1999). Tennessee no longer participates in the National Pool. Instead, the insurance carriers that are a part

---

[3] Judge Phillips is now a United States District Judge in the Eastern District of Tennessee.

[4] The report and recommendation was accepted and adopted by Judge R. Allan Edgar on October 20, 1992 (Case No. 1:92-cv-82, Court File No. 113).

9

of TWCIP are required to participate in the Tennessee Aggregate Excess of Loss Mechanism ("TAELM") (Court File No. 23, Exh. A, p. A-2). As far as the Court can tell, the principal differences between TAELM and the National Pool are (1) participation is mandatory in TAELM, (2) only Tennessee insurance carriers participate in TAELM, and (3) TAELM's administrator is AON (Court File No. 52, pp. 2-3; Court File No. 53, Part 2, pp. 2-3).

Although the changes just mentioned are significant, they do not seem to have any bearing on Judge Phillip's finding TWCIP is not a legal entity. AON has simply taken on NCCI's role and a new reinsurance mechanism is in place.[5] The old system had a "plan" and the new system has a "plan." Both plans are a method to provide workers' compensation to Tennessee employers in the residual market. Thus, on its face, TWCIP does not appear to be a legal entity.

Defendants rely heavily on the language of the Plan Document, which outlines TWCIP and the rules and regulations of TWCIP, to establish TWCIP is a legal entity. The Plan Document states in relevant part:

> Pursuant to the code of laws of Tennessee, a plan shall be implemented among insurers with respect to equitable apportionment among them of applicants for Workers Compensation Insurance . . . . There is hereby established the Tennessee Workers Compensation Insurance Plan . . . . This **entity** replaces the existing Workers Compensation Insurance Plan . . . and is hereby approved by the State of

---

[5] For this very reason, the only authority relied on by Defendants is inapposite. In *Aetna Cas. & Sur. Co. v. Landry Enters., Inc.*, 1995 WL 217468, at *4-*8 (E.D. La. Apr. 12, 1995), the court held the National Pool, an unincorporated association, was a real party in interest and its presence in the lawsuit destroyed diversity. The National Pool is not part of the current Tennessee system. The function the National Pool played in the old system is now handled by TAELM, not TWCIP. However, even if TWCIP handled reinsurance, it is not an unincorporated association like the National Pool. National Pool was and remains a voluntary association of insurance carriers who enter into contracts with each other. TWCIP, and TAELM for that matter, are not voluntary associations where insurance carriers contract with each other. Also of note, in *Landry*, there was a state workers' compensation plan in effect but there was no hint it should have been a party to the lawsuit.

> Tennessee, Department of Commerce and Insurance . . . .
>
> . . .
>
> The Commissioner hereby adopts the TWCIP as **the mechanism** for providing the equitable apportionment among insurers of applicants for Workers Compensation Insurance . . . .
>
> . . .
>
> The Agent or the employer is responsible for forwarding the completed application form to [AON] with an employer or agency check **payable to [TWCIP]** . . . .
>
> . . .

(Court File No. 23, Exh. A, pp. A-1, 8 (emphasis added)). The language emphasized above could be construed to suggest TWCIP is a legal entity.[6] Payments are made to TWCIP and TWCIP is referred to as an "entity". Nonetheless, the Court does not believe the Plan Document makes TWCIP a legal entity. The Plan Document is best understood within a larger context.

Tenn. Code Ann. § 56-5-314(c)(1) requires the Commissioner of Commerce and Insurance ("Commissioner") to "implement a plan . . . for the equitable apportionment among insurers of applicants for workers' compensation insurance who are in good faith entitled to, but who are unable to procure through ordinary methods, such insurance. Such plan shall provide reasonable rules governing the equitable distribution of risks by direct assignment, reinsurance, or otherwise . . . ."

---

[6] The language could also be construed in harmony with the conclusion TWCIP is not an entity. Right after the Plan Document refers to TWCIP as an "entity," it refers to TWCIP as a "mechanism". As for the payments to TWCIP, Liberty submitted the affidavit of Thomas Redel, the President of AON. In his affidavit, Mr. Redel explains when the Plan Document refers to TWCIP "taking such action, such as accepting premiums, it means AON, as [TWCIP] [a]dministrator, will take that action" (Court File No. 34, Part 6, Affidavit of Thomas Redel, at ¶ 7). This reasoning is not at all far-fetched. AON, not TWCIP, enters into contracts with insurance carriers and AON is the one who implements TWCIP and the Plan Document (Court File No. 23, Exh. A, pp. A-1, 2).

There is no suggestion in this language the "plan" is or should be a legal entity. The "plan" is designed as a mechanism that matches employers with insurance carriers. Unlike the Minnesota plan, the Tennessee "plan," as outlined by the Tennessee Legislature, has no assets, does not enter into contracts, and is not a member of an association. It simply is a method or mechanism.

Further shedding light on the nature of TWCIP is Tenn. Code Ann. §§ 56-5-314 (a) & (b). This section allows the workers' compensation insurance carriers to form (1) joint underwriting arrangements, (2) pools, and (3) residual market mechanisms. TWCIP is a plan that implements a residual market mechanism. A "pool" is defined as "a voluntary arrangement other than a residual market mechanism . . . pursuant to which two (2) or more insurers participate in the sharing of the risks on a predetermined basis." If insurers want to form a "pool" the *pool* is required to "file with the [Commissioner] a copy of its constitution, articles of association or incorporation, bylaws and any other rules or regulations governing its activities . . ." Tenn. Code Ann. § 56-5-314(b)(2). In contrast, for a residual market mechanism to function, the *insurers* are required to submit in writing to the Commissioner, "[a]ny residual market mechanism, plan or agreement to implement such a mechanism, and any amendments thereto . . . ." Tenn. Code Ann. § 56-5-314(b)(3). Unlike the pool, the residual market mechanism and the plan implementing it are not required to file articles of association or incorporation. This difference strongly suggests the Tennessee Legislature neither required nor expected TWCIP to be a legal entity.

With this larger framework in mind, the Court concludes TWCIP is not a legal entity which can sue or be sued. Although the drafters of the Plan Document used phrases suggesting TWCIP is a legal entity, when the Court considers the purpose and history of TWCIP, along with the absence of other similar state plans suing or being sued, it cannot conclude TWCIP is a legal entity.

12

Defendants have tried to create something that is simply not there. TWCIP is merely a contractual mechanism to provide workers' compensation insurance to employers who cannot obtain workers' compensation insurance in the voluntary market.

Since the Court concludes TWCIP is not a separate entity which can sue or be sued, TWCIP cannot be joined to this cause of action. As a result, diversity of citizenship remains intact and the Court has subject matter jurisdiction.[7] Accordingly, the Court will **DENY** Defendants' motion to dismiss insofar as it rests on subject matter jurisdiction.

### B. Indispensable Party

Since TWCIP is not a legal entity which can sue or be sued, it cannot be an indispensable party to this action. Accordingly, the Court will **DENY** Defendants' motion on this ground.

### C. Right to Recover Unpaid Premiums

Next, Defendants argue the Plan Document expressly removes standing from Liberty to pursue this action (Court File No. 24, p. 7). Since it is necessary for the Court to go beyond the pleadings to resolve this issue, it will treat this part of Defendants' motion as a motion for summary judgment.

The Plan Document provides in relevant part:

> Each [insurance carrier] is responsible for the collection of all premiums on all risks assigned to each respective [insurance carrier] under the TWCIP until such premiums

---

[7] Even if TWCIP were an entity which could sue or be sued, the Court would still conclude Liberty, despite the existence of TWCIP, has the ability to sue Defendants. Liberty issued a workers' compensation policy to ASK and a contract was created between ASK and Liberty. If ASK made material misrepresentations on its application for insurance, Liberty would have been injured. It is immaterial the loss would be redistributed by AON pursuant to TWCIP. *See County of Oakland v. City of Detroit*, 866 F.2d 839, 845-46 (6th Cir. 1989) (finding the County of Oakland had standing to sue even though it was only an intermediary through which payment of charges allocated to municipalities flowed).

13

become forty-five (45) days past due. At such time, the collection responsibilities will move to a vendor collection agency designated by [AON].

(Court File No. 23, Exh. A, p. A-14). Defendants aver the unpaid premiums Liberty seeks are more than forty-five days past due, therefore, the vendor collection agency designated by AON is the only party that can sue Defendants for unpaid premiums.

The quoted portion of the Plan Document appears to be an assignment of collection responsibilities from the insurance carrier to a vendor collection agency. Although the word assignment is not used, the phrase "will move" means essentially the same thing. Thus, after forty-five days the vendor agency steps into the shoes of Liberty and the vendor agency has the "collection responsibilities". *See Aetna Cas. & Sur. Co. v. Tenn. Farmers Mut. Ins. Co.*, 867 S.W.2d 321, 323 (Tenn. Ct. App. 1993). "[A]n assignment for purposes of collection only, in which the assignee has a duty to account to the assignor, transfers substantive rights to the assignee. The assignee is the real party in interest even though assignee must account to the assignor." 4 James Wm. Moore et al., Moore's Federal Practice § 17.11 (3d ed. 1997).

On one hand, since Liberty assigned the "collection responsibilities" to a vendor agency, it may have transferred its right to sue to the vendor agency. *Id.* After all, a collection responsibility oftentimes includes filing suit to recover debts owed. In other words, if Liberty made a complete assignment for purposes of collection, the real party in interest is the vendor agency. *Id.*; *see Dixie Portland Flour Mills, Inc. v. Dixie Feed & Seed Co.*, 382 F.2d 830, 833 (6th Cir. 1967) (explaining "an assignment for purposes of collection" was valid under Tennessee law and the assignee was the sole real party in interest); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 125 (2d Cir. 1984) (stating "an unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor");

On the other hand, even though the Plan Document requires Liberty to move the collection responsibilities to a vendor agency after forty-five days, Liberty never assigns its right to the unpaid premiums. This suggests Liberty's assignment was a partial assignment, not a complete assignment. "[I]f the assignment for purposes of collection is partial, both the assignee and assignor will be real parties in interest to the extent of their interests." Moore's Federal Practice, § 17.11. Assuming the assignment was a partial assignment, Liberty would still retain the right to file suit against ASK for unpaid premiums.

The Court believes the assignment mentioned above could have been complete or partial. As such, the Court cannot decide as a matter of law Liberty is not the real party in interest with respect to the collection of unpaid premiums. Accordingly, the Court will **DENY** Defendants' motion to dismiss on this ground.

## IV. CONCLUSION

For the reasons stated above, the Court will **DENY** Defendants' request for oral argument (Court File No. 47); **GRANT IN PART** and **DENY IN PART** Defendants' motion to strike (Court File No. 53); and **DENY** Defendants' motion to dismiss (Court File No. 23).

An order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**